UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOPE A. APLEY,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 09-12748
HON. GEORGE CARAM STEEH
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Hope A. Apley brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On March 30, 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging disability as of April 3, 2005 (Tr. 88-96). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 8, 2008 in Fort Gratiot, Michigan before Administrative Law Judge ("ALJ") James P. Alderisio (Tr. 39). Plaintiff, represented by attorney John Patterson, testified, as did Vocational Expert ("VE") Annette Holder (Tr. 41-46, 46-49). On November 5, 2008, ALJ Alderisio found that Plaintiff was not disabled (Tr. 30). On May 8, 2009, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for judicial review of the final decision on July 13, 2009.

## **BACKGROUND FACTS**

Plaintiff, born June 16, 1965, was 43 when the ALJ issued his decision (Tr. 30, 88). She completed two years of college and worked previously as a care giver at a nursing home (Tr. 107, 113). She alleges disability as a result of Chronic Obstructive Pulmonary Function ("COPD") as well as blood clots and chronic back problems (Tr. 106).

### A. Plaintiff's Testimony

Plaintiff testified that she was right-handed and currently held a valid driver's license (Tr. 42). She reported that after receiving a GED, she completed an Associate's Degree in Business Administration (Tr. 42). Plaintiff reported that she worked most recently as a nurse's aide (Tr. 43). She opined that she would be unable to perform her former work because of the lifting requirements (up to 200 pounds), pain, and her need to take prescription drugs (Tr. 44). Plaintiff testified that at one point she owned and directed two "group homes," requiring her to perform personal care activities on behalf of the residents (Tr. 44).

Plaintiff alleged that joint pain made bending painful, adding that she had recently begun vomiting blood clots as a result of Coumadin usage (Tr. 45). She reported that a recent 60 pound weight gain exacerbated her joint and back pain (Tr. 45). She noted further that she had recently diagnosed with a hiatal hernia and a stomach ulcer (Tr. 46).

### B. Medical Records

#### 1. Treating Sources

November, 2001 psychological treating notes state that Plaintiff was depressed but denied suicidal ideation (Tr. 151). In January, 2002, Plaintiff opined that her antidepressive medication was "helpful" (Tr. 174). March, 2002 treating notes indicate that Plaintiff was making improvements to her personal and financial life (Tr. 165). Dr. Edler noted in April, 2002 that although Plaintiff experienced external stressers she seemed less depressed (Tr. 181). August, 2002 treating notes indicate that Plaintiff was getting divorced, closing a

business, and seeking work at a behavioral health clinic (Tr. 185). Her mood was deemed "good" (Tr. 185). In November, 2005, Plaintiff received emergency treatment for acute sciatica (Tr. 196). She was prescribed Vicodin (Tr. 196). In January, 2006, Plaintiff again sought treatment for back pain (Tr. 203). She was prescribed Robaxin and Darvocet and advised to avoid bending or twisting (Tr. 204). An X-ray of the lumbosacral spine was unremarkable (Tr. 205). In March, she was diagnosed with COPD and muscle spasms (Tr. 211-212). She was advised to perform back exercises (Tr. 213). In June, 2006, Plaintiff reported renewed back pain but refused a referral to a surgeon due to financial difficulties (Tr. 231-233). She reported improvement upon taking Toradol (Tr. 234). She again sought emergency treatment in August, 2006 (Tr. 238). Imaging studies from the following month did not show disc herniation or spondylolisthesis (Tr. 267). In November, 2006, Theron H. Grover, M.D. administered steroid injections (Tr. 272). He noted a "request of overtaking medications," indicating that medications were not due to be filled for another two weeks (Tr. 273).

In April, 2007, Plaintiff once again sought emergency treatment after injuring her arm (Tr. 240). X-rays were negative for fractures (Tr. 242). The same month, imaging studies of the chest showed evidence of COPD (Tr. 247). Also in April, 2007, Michael Ogboh, D.O. performed a "Work-Related Activities" assessment, opining that Plaintiff was capable of lifting 10 pounds occasionally and 5 pounds frequently; and standing, walking, or sitting for a total of one to two hours in an eight-hour work day (Tr. 276). The physician found that Plaintiff was unable to climb, balance, stoop, crouch, kneel, crawl, reach, or push or pull (Tr. 276). He concluded that Plaintiff was unable to work for more than one and a half hours each day (Tr. 277).

September, 2007 imaging studies of the lumbar spine showed "mild" degenerative changes (Tr. 280). Imaging studies of the right hip and right elbow were likewise

unremarkable (Tr. 281-282). The following month, Plaintiff sought emergency treatment for leg pain (Tr. 283). Her pulse ox was 100% (Tr. 283).[1] She was diagnosed with chronic deep vein thrombosis (Tr. 284). She was prescribed blood thinners (Coumadin and Heparin) and received Valium on request (Tr. 284, 290). Plaintiff was discharged with directions to continue taking Coumadin (Tr. 291). Imaging studies showed normal blood flow (Tr. 289).

November, 2007 notes indicate that Plaintiff again underwent mental health treatment (Tr. 153). Staff notes show that she had been depressed since her grandson died accidentally while in her care (Tr. 154, 306). She reported that she spent her leisure time working on crafts, watching television and playing board games (Tr. 314). She was assigned a GAF of 40 as a result of a depressive disorder, occupational, and economic problems[2] (Tr. 316). Plaintiff claimed that she was unable to work as a result of a herniated disc (Tr. 154). The same month, a chest x-ray was normal with the exception of "patchy density" in the right upper lobe (Tr. 327).

In December, 2007, Plaintiff underwent a psychiatric evaluation (Tr. 343). Plaintiff denied suicidal intentions, opining that a September, 2007 hospital admission for depression following the death of grandson was unwarranted (Tr. 343). She reported a history of depression dating back to early adulthood (Tr. 343). Psychiatrist Christine M. Cucchi, D.O. noted that Plaintiff had difficulty walking (Tr. 345). Plaintiff indicated that she was seeking therapy because it was "court ordered" (Tr. 345). She was assigned a GAF of 45[3] (Tr. 346).

---

[1] "Pulse ox," or "pulse oximeter," refers to a device that measures the oxygen saturation of arterial blood, that is, the percentage of hemoglobin molecules bound with oxygen molecules. A reading of over 97% would be considered normal.

[2] A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

[3] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

In January, 2008, Plaintiff opined that her medication was helpful (Tr. 355). She reported feeling a "tiny bit better" (Tr. 353). She was noted to have a slow gait (Tr. 353). Notes from the end of January, 2008 indicate that Plaintiff was well groomed with fluent speech and no abnormal movements (Tr. 349). She expressed the desire to move to Florida when her disability claim was granted (Tr. 349). The same month, Plaintiff sought emergency medical treatment, reporting that her leg had been swollen for the last two or three days (Tr. 336). She was advised to increase her dose of Coumadin (Tr. 338). Emergency room staff noted that Plaintiff's back was "normal to inspection" with good mobility in all four extremities (Tr. 360). Plaintiff admitted to smoking one and a half packs of cigarettes each day (Tr. 368). In February, 2008, Plaintiff reported that she felt somewhat better but had difficulty sleeping (Tr. 380).

### 2. Consultive or Non-examining Sources

In May, 2006, R. Scott Lazzara, M.D. examined Plaintiff on behalf of the SSA (Tr. 218-221). Plaintiff opined that constipation precipitated her back problems (Tr. 218). She denied surgery or the use of an assistive device (Tr. 218). Plaintiff indicated that she stopped working in April, 2005 because of "downsizing" (Tr. 218). She continued to drive, but slept on a couch and experienced difficulty bending (Tr. 218). She displayed normal muscle tone and grip strength (Tr. 219). Noting that Plaintiff walked with a "moderate" limp, Dr. Lazzara opined that she would benefit from the use of a cane (Tr. 220). He remarked that Plaintiff experienced asthma, but that her symptoms were stable (Tr. 220).

In August, 2006, R. Patel, M.D. also conducted a consultive exam, noting Plaintiff's claim that she experienced shortness of breath upon walking a half mile (Tr. 249-257). Plaintiff admitted to smoking half a pack of cigarettes a day despite having asthma (Tr. 249). Dr. Patel recorded a pulse-ox of 99% (Tr. 250). He found "mild" range of motion restrictions

in the lumbar spine but an otherwise normal examination (Tr. 251). He concluded that Plaintiff was "over-reacting for the pain and seems to be malingering" (Tr. 251).

The same month, a Physical Residual Functional Capacity Assessment by a non-examining source found that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand or walk for six hours in an eight-hour period, but sit for less than six; and push and pull without limitation (Tr. 260). The Assessment found further that Plaintiff could climb, balance, stoop, kneel, crouch, and crawl on a frequent basis (Tr. 261). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 262-263). Plaintiff's allegations of limitation were deemed "partially" credible (Tr. 264).

### 3.  Material Submitted After the Administrative Decision[4]

September, 2007 records show that Plaintiff received psychiatric inpatient treatment for several days following the death of her grandson after stating that she wanted to kill herself (Tr. 523, 549). Treating notes state that she was "overwhelmed with guilt and grief"

---

[4] Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding* ..." (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

Plaintiff does not request a Sentence Six remand. Any issue not raised directly by Plaintiff is deemed waived. *United States v. Campbell,* 279 F.3d 392, 401 (6th Cir.2002). Even assuming for the sake of argument that Plaintiff had raised this issue, reliance on the later submissions would be unavailing. A number of the "new" records are simply copies of the earlier material or substantively duplicative of earlier records. Another category of records are "new," but refer to Plaintiff's condition subsequent to the administrative decision and are *per se* immaterial. While yet other records fall within the relevant period (such as mental health treatment in the days following the death of Plaintiff's grandson) they do not form a basis for changing the ALJ's finding that Plaintiff could perform exertionally light work. Likewise, April, 2008 notes stating that Plaintiff possibly experienced a hiatal hernia do not suggest that the condition would create workplace limitations (Tr. 413). Finally, aside from the fact that the newer records would be unlikely to change the ALJ's decision, Plaintiff has not provided "good cause" (as required §405(g)) for the tardy submission of this material.

(Tr. 524). She was assigned a GAF of 35 (Tr. 523). October, 2007 treating notes confirm that Plaintiff was placed in the psychiatric unit in Port Huron Hospital "for a few days" following the death of her grandson (Tr. 401). In March, 2008, Plaintiff stated that she was feeling better and "that time" had "an effect on her resolving the self blame" resulting from the death (Tr. 531). In April, 2008, Theron H. Grover, M.D. administered "trigger point" injections, noting that Plaintiff alleged pain "as high as seven" on a scale of one to ten (Tr. 285). Dr. Grover remarked that Plaintiff's lower extremity strength was "unchanged at a 5/5" (Tr. 385). The following month, Plaintiff reported weight gain and symptoms of a hiatal hernia (Tr. 413). She reported that she was leaving for Florida for a two-week vacation (Tr. 506).

July, 2008 counseling notes indicate that Plaintiff requested a medication change after experiencing a substantial weight gain (Tr. 501). August, 2008 treating notes state that Plaintiff requested additional trigger point injections despite 5/5 lower extremity strength and the absence of a discernable pathology (Tr. 384). October, 2008 imaging studies of the lumbosacral spine showed "mild osteoarthritis" but "no acute abnormalities" (Tr. 14). In December, 2008, Dr. Grover, citing the recent imaging studies, reiterated that Plaintiff displayed "no acute abnormalities" (Tr. 386). The same month, counseling notes indicate that Plaintiff, using a cane, was well groomed but tearful (Tr. 482). January, 2009 imaging studies of the chest and ribs found clear lungs and no fractures (Tr. 429). A February, 2009 chest x-ray showed probable pneumonia (Tr. 470). In March, 2009 Plaintiff requested Toradol for back pain (Tr. 409).

### C. Vocational Expert Testimony

Citing the *Dictionary of Occupational Titles* ("DOT"), VE Annette Holder classified Plaintiff's former work as direct care worker or group home worker as skilled at the medium

exertional level but performed (as described by Plaintiff) at the heavy exertional level[5] (Tr. 46).  The ALJ then posed the following hypothetical question to the VE

> Suppose I was to find that she could do medium work with the following restrictions.  No climbing of ladders, ropes or scaffolding.  No more than occasionally climbing ramps and stairs, occasionally stooping, no kneeling, occasionally crouching and crawling. . . . [S]he'd have the following psychological restrictions.  No exposure to fumes, smoke, dust, noxious gases.  No exposure to hazardous machinery, vibrating machinery.  The jobs would be simple one and two step instruction jobs, low stress.  She'd have no useful ability to deal with the public.  She could interact with her supervisors at a limited, but satisfactory level.  She could deal with work stress at the limited, but satisfactory level, and maintain her attention and concentration at that level.  Would there be jobs for such a person?

(Tr. 47).  The VE stated that the above limitations would preclude Plaintiff's former work but would allow her to perform the unskilled, exertionally medium work of a dining room or cafeteria attendant (1,800 positions in southeastern Michigan) (Tr. 47). The VE found that Plaintiff could also perform the exertionally light work of a general office clerk (2,500) (Tr. 47-48).  The VE testified that if the individual were limited to sedentary work with a sit/stand option, Plaintiff could perform the work of a general office clerk (sedentary level)(1,000) and sorter (1,100) (Tr. 48).  The VE found that if Plaintiff's allegations of physical limitation were fully credited, she would be unable to perform any work (Tr. 48).

### D.    The ALJ's Decision

Citing Plaintiff's medical records and testimony, ALJ Berkowitz found that Plaintiff experienced the severe impairments of  "back pain, chronic obstructive pulmonary disease, major depression, post traumatic stress disorder, and deep vein thrombosis" but that none of the conditions met or medically equaled the impairments found in Part 404 Appendix 1

---

[5] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Subpart P, Appendix No. 1 (Tr. 22-23). The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC"):

> to perform light work . . . except being unable to lift more than 20 pounds occasionally and 10 pounds frequently, no climbing of ladders, ropes, and scaffolding, no more than occasionally being able to climb ramps and stairs, occasionally being able to stoop, no kneeling, occasionally being able to crouch and crawl, no exposure to fumes, smoke, dust, and noxious gases, no exposure to hazardous machinery and vibrating machines, being limited to simple, one to two step instructions, being limited to low stress work, no useful ability to work with the public, limited but satisfactory ability to interact with supervisors, and limited but satisfactory abilities to deal with work stresses and to maintain attention and concentration.

(Tr. 23). Adopting the VE's job findings, the ALJ determined that although Plaintiff was unable to perform her former work, she could work as a general office clerk (Tr. 30).

In support of the non-disability finding, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her physical conditions were "not credible to the extent they [were] inconsistent with the above residual functional capacity assessment" (Tr. 24). He cited Dr. Lazzara's May, 2006 observations that Plaintiff walked without an assistive device and had unimpaired manipulative functions (Tr. 24). The ALJ also noted cited August, 2006 findings that Plaintiff had normal muscle tone, "'overreact[ed]'" for her pain, and "seemed to be malingering" (Tr. 25).

### **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff argues that the hypothetical limitations posed by the ALJ did not reflect her true degree of impairment. *Plaintiff's Brief* at 4-10, *Doc. # 13* (*citing Varley v. Commissioner*

*of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987)).  She contends that "each element of the hypothetical does not accurately describe [her] in all significant, relevant respects." *Id.* at 6.  Plaintiff does not state specifically how the hypothetical limitations were deficient, but appears to argue that the ALJ erred by failing include her allegations that she was unable to perform "simple daily functions" among the limitations posed to the VE. *Id.* at 8 (internal citations omitted).

A hypothetical question constitutes substantial evidence only if it accounts for the claimant's physical and mental impairments. *Varley*, 820 F.2d at 779. In *Webb v. Commissioner of Social Sec.*, 368 F.3d 629 (6th Cir.2004), while rejecting the notion that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question, nonetheless acknowledged that "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632 ( citing *Varley,* 820 F.2d at 779). See also, *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001).

Substantial evidence easily supports the ALJ's choice of restrictions.  As to physical limitations, the hypothetical question precluded all kneeling and climbing of ladders, ropes or scaffolds and only occasional crouching and crawling (Tr. 10).  If anything, the record would support a lesser degree of restriction.  Imaging studies of the spine were uniformly negative for fractures or herniation.  Plaintiff stated on her application for DIB that she was disabled as of April 3, 2005 but later admitted that her April, 2005 job termination was the result of "downsizing" (Tr. 218).  Examining source observations show normal muscle tone and only "mild" range of motion limitations (Tr. 219, 251).  Later submitted material shows that her physical problems did not prevent her from planning and taking a two-week trip to Florida in May, 2008 (Tr. 506).

Likewise, the ALJ's choice of psychological limitations is well supported. He limited Plaintiff to low stress jobs with no exposure to the general public and only limited interaction to supervisors (Tr. 47). Treating notes show that despite an ongoing struggle with depression, Plaintiff was able to perform craft work, play board games, and make long term plans to move to Florida (Tr. 314, 349). Although Plaintiff expressed reluctance to babysit following the death of her grandson, treating notes indicate that her adult children deemed her physically and psychologically able to care for her other grandchildren on a regular basis (Tr. 380). Because the ALJ's inclusion of certain limitations and omission of others is well supported by the record, he was not required to include Plaintiff's allegations of more extreme physical and psychological limitations. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

In closing, the recommendation to uphold to the ALJ's decision should not be read to trivialize Plaintiff's well documented personal or occupational difficulties. However, the ALJ's determination that she was not disabled is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Dated: April 6, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on April 6, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on April 6, 2011: **Hope A. Apley** - 911 Wedge Road; Sandusky, MI 48471-9417.

                                              s/Michael E. Lang
                                              Deputy Clerk to
                                              Magistrate Judge R. Steven Whalen
                                              (313) 234-5217